# IN THE UNITED STATED DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

Civil Action No.:

| | |
|---|---|
| BENJAMIN MARINCUS and SKIP TAYLOR,<br><br>      Plaintiffs,<br>v.<br><br>AVIDYNE CORPORATION<br><br>      Defendant. | **TRIAL BY JURY DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiffs BENJAMIN MARINCUS and SKIP TAYLOR individually and on behalf of the class described below (hereinafter, "Plaintiffs " or "plaintiffs class"), by their undersigned counsel, hereby brings this action for damages against the Defendant, AVIDYNE CORPORATION (hereinafter, "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of all individuals and entities such as Plaintiffs. This case involves the unlawful manufacturing practices of the Defendant resulting in numerous dangerous and defective products this resulted in the products being sold endangering the lives and property of the Plaintiffs. Such defects included creating phantom planes on radar, sudden loss of power in equipment, sudden and improper restarting of the equipment, loss of access to maps, and many other issues.

## PARTIES, JURISDICTION, AND VENUE

2. The Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act of 2005 (CAFA).

3. Plaintiff, Benjamin Marincus is a resident of Montana.

4. Plaintiff, Skip Taylor is a resident of Georgia.

5. Defendant, AVIDYNE CORPORATION is a corporation incorporated under the laws of Florida and has its principal place of business at 710 North Drive, Melbourne, Fl 32934.

6. At least one member of the class of plaintiffs is a resident of a state that is different from the Defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A) and the Class Action Fairness Act of 2005.

7. The claims asserted by the plaintiff class, aggregated as required by 28 U.S.C. § 1332(d)(6), exceed the sum or value of $5,000,000.00 within the meaning of 28 U.S.C. § 1332(d)(2).

8. The class of unnamed plaintiffs exceeds 100 in number within the meaning of 28 U.S.C. § 1332(d)(5)(B).

9. Venue is proper in this judicial district pursuant to 28 U.S. Code § 1391 because the Defendant is a resident of Brevard County, Florida for venue purposes.  The Defendant is an entity with the capacity to sue and be sued in its common name under the applicable laws of the state and is subject to the court's personal jurisdiction through its incorporation and established place of business in this district.

## CLASS ACTION ALLEGATIONS

10. Plaintiffs bring this class action on behalf of themselves, and all persons who purchased Avidyne products from 2019 up to and including 2025.

11. While the exact number and identities of the plaintiff class are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are several thousand Avidyne customers throughout Florida, the United States, and foreign states who have purchased Avidyne products. The identities of the class members can be ascertained through appropriate discovery, from records maintained by Defendants and their agents.

12. Common questions of fact and law exist as to all class members, which predominate over any questions affecting only individual members of the class. The common legal and factual questions which do not vary from class member to class member, and which may be determined without reference to individual circumstances of any class member include, but are not limited to, the following: Whether the Defendant engaged in unlawful manufacturing practices resulting in dangerous and/or defective products; whether the Defendant breached the contracts entered into with members of the plaintiffs class; whether the Defendant engaged in willful or wanton misconduct; whether the Defendant was negligent and whether class members are entitled to damages.

13. The named Plaintiffs' claims are typical of the claims of the class members, and the representative Plaintiffs' interests are coincident with and not antagonistic to those of the other class members they seek to represent. Plaintiffs will fairly and adequately protect the interests of the members of the class. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including complex cases and consumer actions, and Plaintiffs intend to prosecute this action vigorously, particularly due to the threat to life and limb that has been presented by Avidyne to each an every one of the effected customers.

14. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual litigation of the claims of all class members is impracticable. Even if every class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By

contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each class member.

15. Individual actions by class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

16. The Plaintiffs are individuals who purchased products from Avidyne, those who purchased equipment or vehicles which contained Avidyne products, and those who made use of Avidyne products provided to them by third parties and were subsequently endangered by them or damaged by them.

17. This is known to have effected, but is not limited to: IFD440 and IFD550 among other units.

18. Avidyne produces and sells a variety of products that are integral to flying safely and to ensure that individuals can safely fly to an airport without risking impacting another plane, or terrain, and to maintain radio contact with all parties. This includes FMS, GPS, navigation systems, flight displays, sky tracking and surveillance systems, digital autopilot systems, and audio panels for planes. The failure of any one of these components can spell death or disaster for any pilot.

19. Safely navigating a plane, and landing it, if there is a failure in any one of these systems, can become nearly impossible. As failures of any of Such failures become a source of danger to any and all customers facing any issues regarding the products in flight.

20. The Plaintiffs all share commonalities as Avidyne has negligently sold defective equipment, rendered defective repairs, and allowed for defective equipment to be utilized in flying the aircraft, endangering the pilots, owners, passengers, and property of those using and owning Avidyne products. Further, they have suffered common damages including the loss of use, the costs for repairs, the loss of business, among others as well.

21. The Plaintiffs have sufficient commonality for a class action lawsuit because "[t]he threshold of commonality is not high." *Broin v. Philip Morris Companies, Inc.*, 641 So.2d 888, 890 (Fla. 3d DCA 1994). The primary concern in the consideration of commonality is "whether the representative's claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory." *City of Opa-Locka, Florida v. Suarez*, 314 So.3d 675, 681 (Fla. 3d DCA 2021). In fact, "[t]he commonality element only requires that resolution of a class action affect all or a substantial number of the class members, and that the subject of the class action presents a question of common or general interest." *Id.* "The requirement is met if the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Morgan*, 33 So.3d at p. 64. Further, Rule 1.220 does not "require that class certification be denied merely because the claim of one or more class representatives arises in a factual context that varies somewhat from that of other plaintiffs." *Powell v. River Ranch Property Owners Ass'n, Inc.*, 522 So.2d 69, 70 (Fla. 2d DCA 1988). "Although claims may arise from different factual contexts, they may be pled as a class action if the subject of the action presents a question of

common or general interest, and where all members of the class have a similar interest in obtaining the relief sought." *Love v. General Development Corp.*, 555 So.2d 397, 398 (Fla. 3d DCA 1989).

22.     The Plaintiffs are in possession of sworn statements by a former employee of the Defendant that the Defendant, when asked to render a repair on the planes of customers, repeatedly redeployed units that had failed previously and came back into the Defendant's possession. The Defendant would "refurbish" these units and redeploy them. However, Further, the Plaintiffs are in possession of sworn statements by former employee of the Defendant that, the Defendant would continue to "refurbish" these units and redeploy them even as they continued to failed repeatedly. That they would represent that these "refurbished" units were new units to owners. Further that the when repairs were requested of Defendant, they would sometimes simply not be conducted and the Defendant would simply return the defective unit to the consumer after it had been sent to them for repairs having rendered no repair on it and would represent that the unchanged unit was now functional.

23.     At least nine plane crashes that took place due to Avidyne equipment and were the cause of nine deaths. Investigations are ongoing and additional crashes and deaths may become apparent through those investigations.

24.     Beyond these nine crashes, the Defendant's equipment caused additional crashes due to system issue that resulted in spatial disorientation of the pilots.

## COUNT I – BREACH OF CONTRACT

Plaintiffs incorporate by reference paragraphs 1 through 22 as if fully set forth herein.

25. Plaintiffs and the class entered into valid contracts with the Defendant wherein the Defendant sold tangible goods to the consumers in consideration of payment.

26. The Defendant breached the contracts by supplying defective and dangerous goods.

27. The Defendant's breach of contract imposed an incredible risk to the Plaintiffs. The failure of any component while in flight could impose incredible danger to the Plaintiffs. The failure of the components provided by Avidyne were particularly dangerous to the user in the event of failure, and at times did, leave them unable to contact anyone, unable to ascertain the correct directions to their location or to allow them to land with any assurance of safety or reliability. This included avionics units which shorted out in midflight imposing an incredible danger on the pilot, passenger, and other pilots as the pilots were forced to use century old landing and navigation techniques to try to overcome the technical failure and survive their harrowing journey. Avionics units were provided which also provided false readings, making it appear that planes were in the sky that had to be avoided which did not exist. Such readings impose incredible danger to the pilots as the evasive maneuvers impose dangers to the pilots and passengers, and having to repeatedly perform such feats can cause pilots to effectively have to dodge an unending array of planes in the air. Worse, a pilot, if these false air plane signatures lead them to cease taking evasive maneuvers, can lead to a midair collision as the pilot incorrectly identifies a real reading as a false one.

28. This can also cause a loss of GPS which can cause a complete collapse in situational awareness as well as an inability to properly analyze dangers posed to the pilot. When you have these failures and you are in IMC (meteorological conditions) and placed into a position of extreme danger by the company that caused this failure.

29. As a proximate result of one or more of the preceding defective or unreasonably dangerous conditions that existed at the time this product left the control of the Defendant, the

Plaintiffs and class suffered damages including loss of use of the products they were installed in, cost to repair, the loss of business, loss of business opportunities, the emotional distress caused by repeated product failures while the pilots are in mid-air, the time in attempting to get this resolved, among other issues, and the dangers that were imposed on them attempting to survive dangerous situations that Avidyne products placed them in.

## COUNT II – BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference paragraphs 1 through 22 as if fully set forth herein.

30. The Defendant breached the implied warranty of merchantability by selling dangerous or defective goods.

31. Section 2-314(1) of the Uniform Commercial Code states that "unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The Code also states that goods are merchantable if they satisfy the following requirements:

> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promise or affirmations of fact made on the container or label if any.

U.C.C. § 2-314(2).

32. When the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill and judgment to select or furnish suitable goods, there is, unless excluded or modified under the next section, an implied warranty that the goods shall be fit for such purpose.

33. Avidyne products IFD440, IFD550, and other products are goods because they are movable at the time of the contract for sale as defined in Section 2-105(1) of the Uniform Commercial Code.

34. The Defendant is a merchant as defined in Section 2-104(1) of the Uniform Commercial Code.

35. From 2019 to 2025 Defendant sold products which were dangerous and/or defective.

36. As such, the Defendant breached the implied warranty of merchantability. The pilots and passengers which rely on the components being reliable and usable are placing the trust of their lives and the lives of those they care for in purchasing Avidyne products. That Avidyne has failed to earn this trust and has provided defective equipment has imposed danger and losses upon each and every effected consumer.

37. As a proximate result of one or more of the preceding defective or unreasonably dangerous conditions that existed at the time this product left the control of the Defendant, the plaintiffs and class suffered damages including loss of use of the products they were installed in, cost to repair, the loss of business, loss of business opportunities, the emotional distress caused by repeated product failures while the pilots are in mid-air, the time in attempting to get this resolved, among other issues, and the dangers that were imposed on them attempting to survive dangerous situations that Avidyne products placed them in.

## **COUNT III – STRICT PRODUCT LIABILITY**

Plaintiffs incorporate by reference paragraphs 1 through 22 as if fully set forth herein.

38. At all times material hereto, the Defendant was in the business of manufacturing, processing, distributing, and/or selling the products described above for the use of the general public.

39. The products that were manufactured, processed, and/or sold by the Defendant were placed into the stream of commerce and sold to the plaintiffs.

40. Prior to and at the time of the occurrence described above, the products that were manufactured, processed, and/or sold by the Defendant were dangerous and defective.

41. One or more of the foregoing defective or unreasonably dangerous conditions existed at the time the product left the control of the Defendant and, further, the defendant knew or reasonably should have known of the condition at that time.

42. These products were dangerous and defective as they created "phantom" planes, lost power while in use, restarted while in use, posed sudden and unwarranted dangers to the pilots and their passengers due to their failures, among other issues. These dangers are imposed for a variety of reasons.

43. For one, a sudden gaining or losing of altitude caused by an evasive maneuver to avoid impacting a plane that suddenly appeared on the screen can cause the plane to stall as it fails to maintain the speed necessary for flight. When an aeroplane stalls, it is not like a car – the engine does not stop. The stall is a breakdown of the smooth airflow over the wing into a turbulent one, resulting in a decrease in lift. The lift will no longer fully support the aeroplane's weight, and the aeroplane sinks. Such an outcome would cause the plane to start to fall out of the air, if the pilot is unable to recover, would result in a crash. Stalls kill pilots every year and pose a tremendous danger. Further, a pilot losing faith in his instruments could result in a mid-air collision as the pilot believes that a real plane directly ahead of him is yet another "phantom" plane.

44. Defendant's system has also been tied with complete failures in mid-flight leading to pilots having to undertake extraordinary measures to merely achieve their survival, the survival of their passengers, and the preservation of the lives of those who they fly over. These systems have placed American lives in positions of extreme danger due, purely, to the actions of the Defendant.

45. Using the Defendant's system a pilot is placed in a position of extreme danger. The Defendant marketed their products as a "flight management system", however, the collective failure of their products results in the simultaneous loss of GPS and communications, among other resources. This leaves the pilot without an ability to fly to a point and achieve safety, communicate with a tower, or even warn other pilots of their approach.

46. Dangers were also imposed by a shorting of any of the components. Any failure in flight of an avionics unit could spell disaster for the pilot, the owner, and any passengers on the flight. When a unit shorts, it loses power suddenly and without warning. This forces the pilot to have to attempt to render a resolution to the problem while in flight. Sometimes a resolution can be rendered, however sometimes no resolution can be rendered while in flight. In such instances, the pilot has to attempt to safely navigate to an airfield that he may or may not be able to contact before he runs out of fuel. This represents an incredible emergency to the pilot and his passengers.

47. As a proximate result of one or more of the preceding defective or unreasonably dangerous conditions that existed at the time this product left the control of the Defendant, the plaintiffs and class suffered damages including loss of use of the products they were installed in, cost to repair, the loss of business, loss of business opportunities, the emotional distress caused by repeated product failures while the pilots are in mid-air, the time in attempting to get this resolved,

among other issues, and the dangers that were imposed on them attempting to survive dangerous situations that Avidyne products placed them in.

## COUNT IV – WILFUL AND WANTON MISCONDUCT

Plaintiffs incorporate by reference paragraphs 1 through 22 as if fully set forth herein.

48. Notwithstanding the Defendant's duty, the defendant committed one or more of the following acts of willful and wanton misconduct:

 a. Knowingly, or with conscious indifference to and reckless disregard for the consequences of its actions, offered for sale to members of the general public dangerous and/or defective products.

 b. Knowingly, or with conscious indifference to and reckless disregard for the consequences of its actions, failed to properly maintain the products during the production/ repair process, although it knew or should have known of the existence of the defects.

 c. Knowingly, or with conscious indifference to and reckless disregard for the consequences of its actions, failed to warn members of the general public of the defects.

49. Avidyne has endangered the lives of each of its customers. By knowingly selling defective equipment to its consumers, it knew that it was placing each user of its products into a position of danger that the pilots themselves would have to escape. The failure of any component of an airplane in the air imposes danger, not only to the pilot and passengers, but to each and every person on the ground. Avidyne's willingness to recklessly sell products that it knew to be defective imposed a danger to the public and to each customer of Avidyne.

50. As a proximate result of one or more of the preceding defective or unreasonably dangerous conditions that existed at the time this product left the control of the Defendant, the plaintiffs and class suffered damages including loss of use of the products they were installed in, cost to repair, the loss of business, loss of business opportunities, the emotional distress caused by repeated product failures while the pilots are in mid-air, the time in attempting to get this resolved, among other issues, and the dangers that were imposed on them attempting to survive dangerous situations that Avidyne products placed them in.

### **COUNT V – NEGLIGENCE**

Plaintiffs incorporate by reference paragraphs 1 through 22 as if fully set forth herein.

51. At all times material hereto, the Defendant was in the business of manufacturing, processing, distributing, and/or selling the products described above for the use of the general public.

52. The Defendant had a duty to exercise reasonable care and caution in the production of its products and in the subsequent distribution and sale of those products to members of the general public to ensure that those products were free from defects, and safe for public use.

53. Defendant breached the requisite duties by committing one or more of the following acts of negligence:

    a. Carelessly and negligently failed to monitor the production of its product, although it knew or should have known of the existence of the defects and/or dangerous products.

    b. Carelessly and negligently failing to monitor the production of its product although it knew or should have known of the existence of the defects and/or dangerous products.

  c.  Carelessly and negligently failed to warn member of the general public of the defect and/or dangerous products.

54. The public has been endangered every time that a plane has entered the sky with components that Avidyne knew were defective. This danger has been imposed on each and every pilot, their families, their passengers, and every person on the ground, whether or not they knew it. Components for planes are relied upon for the livelihood and safety of every American. It is a matter on which all Americans rely.

55. As a proximate result of one or more of the preceding defective or unreasonably dangerous conditions that existed at the time this product left the control of the Defendant, the plaintiffs and class suffered damages including loss of use of the products they were installed in, cost to repair, the loss of business, loss of business opportunities, the emotional distress caused by repeated product failures while the pilots are in mid-air, the time in attempting to get this resolved, among other issues, and the dangers that were imposed on them attempting to survive dangerous situations that Avidyne products placed them in.

56. The Plaintiffs are in possession of sworn statements by a former employee of the Defendant that the Defendant, when asked to render a repair on the planes of customers, repeatedly redeployed units that had failed previously and came back into the Defendant's possession. The Defendant would "refurbish" these units and redeploy them. However, Further, the Plaintiffs are in possession of sworn statements by former employee of the Defendant that, the Defendant would continue to "refurbish" these units and redeploy them even as they continued to failed repeatedly. Further that the when repairs were requested, they would sometimes simply not be conducted and the Defendant would simply return the defective unit to the consumer after it had been sent to them

for repairs having rendered no repair on it and would represent that the unchanged unit was now functional.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury on all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for judgment against Defendant, jointly and severally as follows:

That Plaintiff and each member of the class recover damages for the personal injuries that each has suffered in an amount to be determined by the evidence presented at trial, but in no event less than the jurisdictional minimum of this court.

That Plaintiffs recover their costs of suit and that Plaintiffs' attorney[s] be awarded reasonable attorney's fees, as provided by Fed. R. Civ. P. 23(h).

That Plaintiff and each member of the class be awarded any and all other relief that may be just and proper.

Dated: March 18, 2025,                                         Respectfully submitted,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
*Counsel for Plaintiff*

By:   /s/ *Reginald J. Clyne*
       Reginald J. Clyne, Esq.
       Florida Bar No.: 654302
       9300 South Dadeland Boulevard
       4th Floor
       Miami, Florida 33156
       Telephone: (305) 670-1101
       Facsimile: (305) 670-1161
       rclyne.pleadings@qpwblaw.com
       Cecilia.quevedo@qpwblaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 18, 2025 true and correct copy of the above and foregoing was sent via an automatic email generated by the Florida Courts E-Filing Portal.

By: /s/ *Reginald J. Clyne*
Reginald J. Clyne, Esq.